## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Aníbal J. Cardona, being first duly sworn, do hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent employed by the U.S. Immigration & Customs Enforcement, Homeland Security Investigations, a position I have held since December 10, 2016. I am currently assigned to the Homeland Security Investigations Ponce Office in Ponce, Puerto Rico, where I investigate organized crime, money laundering, drug smuggling, child pornography, illegal weapon possession, and immigration violations, among other crimes.

2. As a Homeland Security Investigations Special Agent, I am authorized to investigate violations of laws of the United States and to execute and serve any order, subpoena, summons, warrant, or other process issued under the authority of the United States. I am familiar with the statutes of the United States Code and, as a federal law enforcement officer, I have participated in investigations, surveillance, interviews, interrogations, arrests, searches, and seizures. I have received formal and on-the-job training, including training on conducting criminal investigations related to narcotics, currency, firearms, contraband smuggling, interdiction, and distribution activities, among others.

3. I have drafted this affidavit for the limited purpose of establishing probable cause for the violations listed on the attached criminal complaint and therefore have not included all of the facts of this investigation. The facts set forth herein are based on my personal knowledge and information furnished to me by other federal and state law enforcement officers.

## FACTS SUPPORTING PROBABLE CAUSE

4. On April 1, 2026, Homeland Security Investigations (HSI) Special Agents (SAs) and Task Force Officers (TFOs) assigned to the Ponce, Puerto Rico Office received information from the Bureau of the Puerto Rico Police Intelligence Unit in San Juan (BPRPIU) regarding the arrest of Eduardo ESCRIBANO-Lopez in Carolina, Puerto Rico.

5. Municipal Police of Carolina, Puerto Rico were on patrol that morning and, at approximately 8:00 a.m., they observed when a 2024 green Toyota Rav-4 sport utility vehicle bearing Puerto Rico license plate KOE-711 (the Vehicle) violated Puerto Rico traffic laws. The Municipal Police attempted to conduct a traffic stop, but the driver fled in the Vehicle.

6. BPRPIU officers were on patrol near the area of the pursuit in Carolina, Puerto Rico. They identified the Vehicle as it passed by their location at a high rate of speed and almost collided with a BPRPIU vehicle.

7. BPRPIU officers then located the Vehicle stopped in the middle of the road on Iturregui Avenue. As BPRPIU officers approached, they saw an individual wearing a black sweatshirt and black sweatpants standing on the driver's side of the Vehicle. After confirming the Vehicle's license plate, officers approached and detained the individual by the Vehicle, who was later identified as ESCRIBANO-Lopez.

8. Civilians in the immediate area explained to BPRPIU officers that they saw ESCRIBANO-Lopez stop in the middle of the road, exit his vehicle, and stash a duffle bag into a rental property's trash can. Using the information provided by the civilians, officers located a duffle bag containing an AK-47 style rifle in the rental property's trashcan. The bag also contained an extended AK-47 rifle magazine containing 43 rounds of ammunition of 7.62 X 39 caliber.

9. After locating the firearm and ammunition, BPRPIU officers advised ESCRIBANO-Lopez of his constitutional rights. While the BPRPIU officers were processing the scene, ESCRIBANO-Lopez admitted that the bag and rifle were his and that the rifle was fixed to fire as a machine.

10. After securing the incident area, BPRPIU officers located security cameras facing the area where they discovered the Vehicle. The footage from these cameras showed ESCRIBANO-Lopez stopping in the middle of the avenue, exiting his vehicle, and stashing a small duffel bag in a trash can in front of a rental property.

11. BPRPIU officers took ESCRIBANO-Lopez to BPRPIU facilities in San Juan to be processed. BPRPIU officers then contacted HSI to consult and to evaluate the arrest for federal prosecution.

12. Later that same day, an SA and a TFO from HSI Ponce responded to BPRPIU facilities and met with the arresting officers. After interviewing the arresting officers, the HSI SA and the HSI TFO approached ESCRIBANO-Lopez and advised him of his Miranda Rights and Warnings in Spanish. ESCRIBANO-Lopez stated that he generally understood his rights but did not want to sign any documents. The HSI SA and the HSI TFO proceeded to interview ESCRIBANO-Lopez for his biographical information. ESCRIBANO-Lopez asked about next steps of the process. The HSI SA and the HSI TFO explained the next stages after his arrest. During the conversation, the HSI SA and HSI TFO reminded ESCRIBANO-Lopez about his constitutional rights.

13. As the conversation continued, ESCRIBANO-Lopez freely and voluntarily stated that the seized items were his and that the rifle was modified to fire as a machinegun. ESCRIBANO-Lopez also admitted that he did not possess a firearms permit.

14. HSI agents recently found multiple music videos on social media showing ESCRIBANO-Lopez holding suspected firearms and singing lyrics related to killing and hurting his enemies. A video from approximately four weeks ago shows ESCRIBANO-Lopez holding an AK-47 with an extended magazine. This firearm matches the appearance of the rifle seized on April 1, 2026.

15. A preliminary firearm function field test conducted by the responding HSI SA, who is an HSI-certified Firearms Instructor, indicated that the seized AK-47 rifle was likely tampered or modified to operate in a different manner. To perform the field function test, an SA clears the firearms of any ammunition and, while pointing it in a safe direction, pulls the trigger and holds it all the way back. As the trigger is held, the rifle cycles by hand instead of by the pressure created by a detonation inside the chamber. Once the cycle is complete, the trigger is slowly released until it resets for a follow-up shot. The trigger of the rifle seized from ESCRIBANO-Lopez fails to reset every time it is cycled by hand. This is a sign that the firearm was either intentionally modified to fire as a machine gun or that the firearm was broken or damaged. However, in my training and experience, the features of the seized firearm are more consistent with intentional modification. Specifically, in addition to the firearm's failure to reset, the firearm's safety lever was very difficult to move, which would be unusual for a firearm that was unintentionally damaged.

16. Law enforcement record checks confirmed that ESCRIBANO-Lopez is not in possession of an active firearms permit within the District of Puerto Rico.

17. Based on my training and experience, I know that firearms and ammunition are not manufactured in Puerto Rico and, therefore, the firearm and ammunition traveled through interstate commerce in order to arrive in Puerto Rico.

18. The following pictures show items seized from ESCRIBANO-Lopez:

a.  AK-47 – Zastava Arms, Serial Number Z92-116875



b.  Ammunition – 43 Rounds – 7.62 X 39 Caliber



c.  Extended Magazine



d. Backpack / Small Duffle Bag



e. Cellular Phone

 

## CONCLUSION

19. Based on the facts set forth above, I respectfully submit that there exists probable cause to charge Eduardo ESCRIBANO-Lopez with 18 U.S.C. § 922(o) – Possession of a machine gun.

20. I hereby declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

ANIBAL J CARDONA-PEREZ    Digitally signed by ANIBAL J CARDONA-PEREZ
Date: 2026.04.02 14:53:44 -04'00'

Anibal J. Cardona
Special Agent
Homeland Security Investigations

Subscribed and sworn pursuant to FRCP 4.1 on this __2nd__ day of April 2026, at 3:05pm by telephone.

HON. MARIANA E. BAUZÁ-ALMONTE
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO